Keenan, J

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-17-14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

HASAN BESNELI and SABA, INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

14 Civ. 7339

**STIPULATION AND ORDER OF**
**SETTLEMENT AND DISMISSAL**
**AS TO SABA, INC.**

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among plaintiff the United States of America (the "Government"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, and defendant SABA, Inc. ("SABA"), through their respective authorized representatives;

WHEREAS, SABA is a Tennessee corporation with its principal place of business in Memphis, Tennessee;

WHEREAS, Hasan Besneli ("Besneli," and together with SABA, the "Defendants") is a citizen of the United States who currently is residing in the Republic of Turkey;

WHEREAS, from in or about 1987 to in or about 2010, SABA regularly engaged in the exporting business, including arranging export transactions that were financed by loans extended or guaranteed by the Export-Import Bank of the United States ("Ex-Im");

WHEREAS, John Osteen ("Osteen") is a citizen of the United States and was SABA's founder and President until in or about 2011;

WHEREAS, Jennifer Windus ("Windus") is a citizen of the United States who was retained by Besneli and SABA at various times to facilitate the application for loans guaranteed by Ex-Im;

WHEREAS, from in or about 2003 to in or about 2010, Besneli and Windus worked

for and on behalf of SABA in connection with various export transactions, including, but not limited to, an export transaction involving the construction of a retirement community in Izmir, Turkey, by TC Basbakani Baskanligingda Darussafaka Cemiyeti ("Darussafaka"), a Turkish non-profit organization, that was financed through a loan guaranteed by Ex-Im;

WHEREAS, in September 2014, the Government commenced a civil action against Besneli and SABA, alleging that Defendants conspired to orchestrate a scheme to fraudulently obtain the Ex-Im guaranteed loan for the Darussafaka project (the "Darussfaka Scheme");

WHEREAS, the Government further alleges that Defendants are liable for damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, codified at 12 U.S.C. § 1833a ("FIRREA");

WHEREAS, the Government also asserts that certain of SABA's parents, subsidiaries, affiliates, and/or their respective current and former officers, directors, employees, shareholders, and/or assigns, are liable for the Darussafaka Scheme pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308, FIRREA, principles of agency, and/or under the common law theory of veil-piercing (collectively, along with the Darussafaka Scheme, the "Covered Conduct");

WHEREAS, in connection with its discussions with the Government, SABA has submitted records and information regarding its financial circumstances, and has demonstrated to the Government that SABA lacks the financial wherewithal to pay the damages and penalties sought by the Government in connection with its claims against SABA;

WHEREAS, to avoid the delay, uncertainty, and expense of protracted litigation of the above claims, the United States and SABA have reached a full and final mutually agreeable resolution of these claims;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.  SABA, Osteen, and Windus consent to this Court's exercise of personal jurisdiction over each of them.

2.  A consent judgment (the "Judgment"), in the form of Exhibit A to this Stipulation, shall be entered against SABA and in favor of the Government in the amount of $3,500,000 (the "Settlement Amount").

3.  SABA admits, acknowledges and accepts responsibility for the following facts:

    a.  In 2002, Besneli advised SABA regarding a potential export transaction for Darussafaka involving the construction of a retirement community in Izmir.

    b.  SABA provided Besneli with a power of attorney empowering him to negotiate the terms of such a transaction on SABA's behalf. Besneli also was given business cards identifying him as an executive of SABA and a SABA e-mail account.

    c.  During negotiations, SABA told Darussafaka officials that it would help Darussafaka seek an Ex-Im-guaranteed loan to finance the construction project in Izmir.

    d.  In late March 2003, Windus, working for Besneli on behalf of SABA, submitted an application to Ex-Im seeking a loan guarantee for Darussafaka's construction project. In that loan application, SABA, through Windus, represented to Ex-Im that "local costs" of that project would be $5.97 million, or 15% of the total project cost. However, SABA did not take any step to verify with Darussafaka whether local costs for the project would or would not exceed $5.97 million.

    e.  In March 2004, and for purpose of obtaining the Ex-Im loan guarantee, SABA also submitted to Ex-Im the Construction and Procurement Agreement between SABA and Darussafaka, which provided that SABA would oversee and monitor the progress of construction at the Izmir site and that SABA would ensure that Darussafaka would pay or finance a 15% "cash payment." SABA did not attempt to verify whether Darussafaka would provide the cash payment.

f.  In March 2004, Deutsche Bank, A.G. approved a loan, subject to an Ex-Im loan guarantee, to Darussafaka in the amount of $38,065,666 for the construction project in Izmir.

g.  Between 2004 and 2007, SABA applied mark-ups of up to 300% or more to certain goods it exported to Darussafaka, and provided the excess funds from the mark-ups, after deducting its 2% commission and certain costs, to an entity controlled by Besneli, Bolzano Ltd.  In June 2005, Darussafaka made SABA aware that the purpose of those mark-ups was to generate "cash money."

h.  Between 2004 and 2007, SABA submitted progress certificates to Deutsche Bank in order to allow Darussafaka to obtain loan proceeds for local costs.  In those certificates, SABA represented that SABA was overseeing the progress of the construction in Izmir.  In fact, by 2005, SABA personnel had ceded such oversight to an agent of Bolzano and had stopped monitoring the progress of construction.

4.  In settlement of the United States' claims against SABA in this action, SABA shall pay the Settlement Amount by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of New York no later than thirty (30) business days after the Effective Date.

5.  Upon entry of this Stipulation, SABA agrees to abstain, for a period of seven (7) years, and Osteen and Windus agree to abstain, for a period of five (5) years, from applying for any loan, loan insurance, loan guarantee or any other type of benefits or programs offered by Ex-Im or participating in any effort to seek such benefits from Ex-Im or participating in such Ex-Im programs directly, through their employees, agents, servants, or attorneys, or by acting in concert with any other person or entity.  This abstention is not intended to affect transactions entered into by SABA, Osteen or Windus prior to the date of entry of this Stipulation.  In the event that SABA, Osteen, or Windus fails to comply with their obligation to abstain pursuant to this paragraph, the Government shall have the right to investigate such non-compliance and seek all

appropriate remedies, including civil and/or criminal contempt.

6. Subject to the exceptions in Paragraph 7 below (concerning excluded claims), conditioned upon SABA's full payment of the full Settlement Amount pursuant to paragraph 4, the Government, on behalf of itself, its officers, agencies and departments, releases SABA and all of its parents, subsidiaries, affiliates, and their respective current and former officers, directors, employees, shareholders, and assigns (other than Besneli), Osteen, and Windus (collectively, the "Released Parties"), from any civil or administrative monetary claim the Government has under the FCA; FIRREA; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; 2 C.F.R. § 180 and 2 C.F.R. § 3513; the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308; and the common law or equitable theories of payment by mistake, unjust enrichment, negligence, and fraud, for the Covered Conduct. For avoidance of doubt, this paragraph does not release Besneli from any liability of any kind related to the Covered Conduct.

7. Notwithstanding the release given in Paragraph 6 of this Stipulation, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as expressly stated in Paragraph 6, any administrative liability;

    d. Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct; and

    e. Any liability based on obligations created by this Stipulation.

8. SABA, Osteen and Windus waive and shall not assert any defenses they may have to any federal criminal prosecution or federal administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy

Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the

Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such federal

criminal prosecution or federal administrative action. Nothing in this paragraph or any other

provision of this Stipulation constitutes an agreement by the Government concerning the

characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of

the United States Code.

     9.    SABA, Osteen and Windus fully and finally release the Government, and its

agencies, officers, employees, servants, and agents from any claims (including attorneys' fees,

costs, and expenses of every kind and however denominated) that SABA, Osteen or Windus

have asserted, could have asserted, or may assert in the future against the Government, and its

agencies, officers, employees, servants, and agents, related to the Covered Conduct and the

Government's investigation and prosecution thereof.

     10.   SABA agrees to the following:

        a.   <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition
Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social
Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the
regulations and official program directives promulgated thereunder) incurred by
or on behalf of SABA, its present or former officers, employees, and agents in
connection with:

        (1) the matters covered by this Stipulation;

        (2) the Government's civil investigation of the Covered Conduct;

        (3)  the investigation, defense, and corrective actions undertaken by SABA in
response to the Government's civil investigation of the Covered Conduct
(including attorney's fees);

        (4) the negotiation and performance of this Stipulation;

        (5) the payments SABA makes to the Government pursuant to this Stipulation,
including costs and attorney's fees; and

b.  <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by SABA, and SABA shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c.  <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: SABA further agrees that within 90 days of the Effective Date of this Agreement it shall identify and repay by adjustment any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States. SABA agrees that the Government, at a minimum, shall be entitled to recoup from SABA any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment. The Government reserves its rights to disagree with any calculations submitted by SABA or any of its rights to audit, examine, or re-examine SABA's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph, and to disagree with any calculations submitted by SABA or any of its agencies or departments concerning any Unallowable Costs included in payments previously sought by SABA, or the effect of any such Unallowable Costs on the amount of such payments.

11.  Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended to be for the benefit of the Government and the Released Parties only. The Government and the Released Parties do not release any claims they may have against any other person or entity.

12.  This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, it shall be deemed to have been drafted by the Government, SABA, Osteen and Windus and shall not, therefore, be construed against either party for that reason in any subsequent dispute.

13.  The Government, SABA, Osteen and Windus shall each bear its own legal and

other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

14.   The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

15.   This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

16.   Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by express courier and by e-mail transmission, followed by postage-prepaid mail, to the following representatives:

> <u>To the Government:</u>
>
> Cristine Phillips, Ellen M. London, and Li Yu
> Assistant United States Attorneys
> United States Attorney's Office, Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
> E-mail:   Cristine.Phillips@usdoj.gov
>               Ellen.London@usdoj.gov
>               Li.Yu@usdoj.gov
>
> <u>To SABA:</u>
>
> Steven Kimelman and Temitope K. Yusuf
> Arent Fox LLP
> 1675 Broadway
> New York, NY 10019
> E-mail:   Kimelman@arentfox.com
>               Temitope.Yusuf@arentfox.com
>
> <u>To Osteen:</u>
>
> Thomas Parker, Esq.
> Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
> First Tennessee Building
> 165 Madison Avenue, Suite 2000
> Memphis, TN  38103

To Windus:

John Brownlee, Esq.
Holland & Knight LLP
800 17th Street N.W., Suite 1100
Washington, DC 20006

17.    The effective date of this Stipulation is the date upon which this Stipulation is

entered by the Court (the "Effective Date").

18.    This Stipulation constitutes the complete agreement between the Government,

SABA, Osteen and Windus.  This Stipulation may not be amended except by written consent of

the Government, SABA, Osteen and Windus.

*For the United States*:                          *For SABA*:

Dated: New York, New York                 Dated:    New York, New York
       September 10, 2014                             September 8, 2014

       Preet Bharara                                  Arent Fox LLP
       United States Attorney

By:    _____              By:    _____
       CRISTINE I. PHILLIPS                    STEVEN KIMELMAN, ESQ.
       ELLEN M. LONDON                         TEMITOPE K. YUSUF, ESQ.
       LI YU                                   1675 Broadway
       Assistant United States Attorneys       New York, NY 10019
       86 Chambers Street, 3rd Floor
       New York, New York 10007

                                        SABA, Inc.

                                        By:    _____
                                               Thomas Stanfield
                                               President

*For John Osteen:*

Dated: Memphis, Tennessee
September __, 2014

    Baker, Donelson, Bearman,
    Caldwell & Berkowitz, PC

By: _____
    THOMAS PARKER, Esq.
    First Tennessee Building
    165 Madison Avenue, Suite 2000
    Memphis, TN 38103

_____
John Osteen

*For Jennifer Windus:*

Dated:   Washington, D.C.
    September /0, 2014

    Holland & Knight LLP

By: _____
    JOHN BROWNLEE, Esq.
    800 17th Street N.W., Ste 1100
    Washington, DC 20006

Jennifer Windus

SO ORDERED:
UNITED STATES DISTRICT JUDGE    9/17/14

_For John Osteen:_                                    _For Jennifer Windus:_

Dated: Memphis, Tennessee                      Dated:   Washington, D.C.
        September _5_, 2014                                  September ___, 2014


        Baker, Donelson, Bearman,                     Holland & Knight LLP
        Caldwell & Berkowitz, PC


By: _____          By: _____
        THOMAS PARKER, Esq.                           JOHN BROWNLEE, Esq.
        First Tennessee Building                       800 17th Street N.W., Ste 1100
        165 Madison Avenue, Suite 2000                 Washington, DC  20006
        Memphis, TN  38103


        _John Osteen by TP_                    _____
        John Osteen   _pursuant to_                    Jennifer Windus
        _power of attorney_
        _granted by John Osteen_


                                SO ORDERED:

                                _John F. Keenan   9/17/14_
                                UNITED STATES DISTRICT JUDGE